## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CASE NO.   1:20-MJ-103** |
| | : | |
| **DAVUD SUNGUR** | : | |
| | : | |
| Accused. | : | |

**REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO RECONSIDER BOND**

The Accused, Davud Sungur, by counsel, respectfully submits the following reply to the Government's memoranda in opposition to his motion that the Court reconsider its denial of bond. Dkt. Nos. 23, 25.

**BACKGROUND**

The factual and procedural background of this case are set forth in Mr. Sungur's Memorandum in Support of Motion to Reconsider Bond, Dkt. No. 21. The Court ordered the Government to file a response to that motion, Dkt. No. 22. The Government filed a response that did not address either the issue of limitations on access to counsel or the Court's extension of the suspension of certain deadlines that had been imposed prior to the March 19, 2020 detention hearing. Dkt. No. 23. The Court therefore ordered the Government to file a supplemental response addressing those changed circumstances. Dkt. No. 24. On March 30, 2020, the Government filed a supplemental memorandum addressing the issues of limitations on access to counsel during the COVID-19 crisis and the suspension of deadlines since the March 19 detention hearing. Dkt. No. 25. The Court's March 27, 2020 Order authorized Mr. Sungur to file this reply by noon on March 31, 2020.

## **ARGUMENT**

Neither the Government's initial memorandum in opposition to Mr. Sungur's motion, nor its supplemental memorandum, meet its burden of proving by clear and convincing evidence under the current and unique circumstances we face that Mr. Sungur's pretrial detention is necessary and that no set of conditions of bond will suffice to ensure the community's safety pending trial.  *See* 18 U.S.C. § 3142(f)(2)(B).

The Government's initial memorandum recites the allegations against Mr. Sungur in detailed fashion, largely relying on the Criminal Complaint, and argues that Mr. Sungur is a danger to the community.  The very allegations the Government posits are what is necessary to support a charge of unlawfully engaging in the sale of firearms; there is nothing uniquely aggravating or dangerous about these set of facts that set this case apart from others charged with this offense. Yet Congress did not establish a statutory presumption against bond for this charge, which the Government concedes.

The Government does not argue that Mr. Sungur poses a risk of flight.  Therefore, the sole issue is whether any set of conditions may be imposed that would ensure the safety of the community pending trial.  The changed circumstances since the time of the March 19, 2020 detention hearing are substantial and require a different balancing between the interests at play here.  On the one hand is the interest in maintaining public safety, and the Government maintains that Mr. Sungur is a danger to the community, not based on his personal history, criminal record, or history of violence, but based on the allegations that brought forth this charge.  On the other hand lies Mr. Sungur's significant liberty interest that the Bail Reform Act aims to protect as he remains presumed innocent, as well as the important interest in allowing the Accused the ability to communicate effectively with his counsel in preparing his defense.  The change in circumstances

outlined in Mr. Sungur's motion to reconsider regarding both the suspension of deadlines and the limitations on access to counsel require a reweighing of these interests in order to determine whether a set of conditions can adequately address the Government's stated interest in protecting the public.  At the heart of the Bail Reform Act is the need for courts to balance the Government's public safety interest with the liberty interest of the individual, and only after the Government proves by "clear and convincing evidence" that Davud Sungur poses an identified and articulable ongoing threat to others can he be detained pending trial.[1]  As the Supreme Court held in *Salerno*: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).

The Government's supplemental memorandum essentially shrugs off the serious concerns outlined in Mr. Sungur's motion to reconsider, stating that these are unfortunate circumstances but not a reason to reconsider the bond determination.  The Government argues that the tolling of speedy trial permitted by the most recent General Order of the Chief Judge of this Court resolves the concerns raised in Mr. Sungur's motion.  Precisely the opposite is true.  Those very delays require the Court to reassess the right balance to strike between Mr. Sungur's liberty interest and ability to prepare his defense against the Government's posited concerns about public safety.

Nowhere in its original or supplemental memorandum does the Government explain *how* Mr. Sungur would pose a continued, identifiable danger to public safety pending trial under the

---

[1] *United States v. Salerno*, 481 U.S. 739, 750-51 (1987) ("The government's interest in preventing crime by arrestees is both legitimate and compelling. . . . On the other side of the scale, of course, is the individual's strong interest in liberty. [T]his right may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society. We think that Congress' careful delineation of the circumstances under which detention will be permitted satisfies this standard. When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat.")

current circumstances, where (1) the entire country is virtually on lockdown due to the COVID-19 crisis, (2) law enforcement has already removed all firearms and evidence related to the case from the Sungur home, and (3) where appropriate conditions of release can be imposed. Mr. Sungur resides with his family, which consists of his parents and three sisters, all of whom are students at George Mason University, and all of whom are aware of his case and will ensure his compliance with the terms of his release. If he is released with the following conditions, it is simply unreasonable to argue that he would somehow still pose a danger to the public:

1. Pretrial supervision;
2. Appointment of a third-party custodian to ensure compliance;
3. No access to any firearms and no firearms in the household;
4. Surrender of his passport;
5. No contact with any witnesses;
6. Home confinement with approved time-outs to meet with counsel;
7. GPS monitoring to ensure compliance with home confinement; and
8. Restricted or monitored internet access.

These conditions would render it virtually impossible for Mr. Sungur to commit any violations pending trial, even if he were so inclined after having been arrested and advised of the seriousness of what he faces. As the Court is aware, defendants charged with child pornography offenses and other serious charges carrying a presumption against bond and far more serious penalties if convicted are routinely released pending trial with conditions, and the incidence of violations are exceedingly rare. Here, there is a statutory presumption in favor of release on bond.

The extent and scale of the COVID-19 crisis and the danger it poses to inmates like Mr. Sungur should it find its way into the detention center, as it has in other localities, including the nearby District of Columbia, also requires a rebalancing of the interests at stake and the setting of bail with appropriate conditions. Social distancing is not an option in jails where inmates are confined together in tight spaces and must share facilities and showers. These detention centers are ripe for the rapid spread of COVID-19. This is why multiple public health experts have urged

courts to reconsider their approach to incarcerating individuals who are appropriate candidates for release during this public health crisis. *See* Exhibit 1, collection of letters from public health experts.

In light of all of this, the recommendation by Pretrial Services that Mr. Sungur be released with supervision is appropriate and in compliance with the mandate of the Bail Reform Act under these unique and fast-developing circumstances. Continued detention would not only deprive Mr. Sungur of his liberty at a time when deadlines are being suspended with no clear end in sight, but it would also make it extremely difficult for Mr. Sungur to effectively work with his counsel in preparing his defense to this case.

## **CONCLUSION**

For all of these reasons, and the reasons previously submitted, Davud Sungur, by counsel, respectfully urges the Court to reconsider its March 19, 2020 decision denying bond and to grant Mr. Sungur pretrial release with any and all appropriate conditions.

Respectfully Submitted,<br>
Davud Sungur,<br>
By Counsel

GREENSPUN SHAPIRO PC

BY: _____/s/_____
  Peter D. Greenspun
  Virginia Bar No. 18052
  Muhammad Elsayed
  Virginia Bar No. 86151
  3955 Chain Bridge Road
  Second Floor
  Fairfax, Virginia 22030
  (703) 352-0100

(703) 591-7268 (fax)
pdg@greenspunlaw.com
me@greenspunlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2020, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which then sent a notification of such filing (NEF) to the following:

John Blanchard
Assistant United States Attorney
United States Attorney's Office,
Alexandria Division
2100 Jamieson Avenue
Alexandria, Virginia 22314
john.blanchard@usdoj.gov

/s/
Muhammad Elsayed